[No. 30025. Department One. September 25, 1947.]

KELLY-SPRINGFIELD TIRE COMPANY, *Appellant,* v. TRUE'S OIL COMPANY, *Respondent.*[1]

*·Harrison M. Berkey,* for appellant.

*Brown & Brown,* for respondent.

ROBINSON, J.—The Kelly-Springfield Tire Company, a Maryland corporation, authorized to do business in this state, brought this action against one of its distributors, True's Oil Company, a Washington corporation, to recover

[1]Reported in 184 P. (2d) 827.

an alleged balance due of $1,798.58, plus interest. The defendant, in its answer, set up the following affirmative defense:

"That there is due and owing defendant from plaintiff the sum of $280.36, $8.13 of which is a balance adjustment, the balance of $272.23 being the amount of bonus due defendant from plaintiff for the first five months of the year 1945, as per the terms of a distributor bonus plan issued by plaintiff to defendant on or about the year 1941 and which said bonus plan has been in full force and effect at all times subsequently, as between plaintiff and defendant, a copy of which bonus plan is in the possession of plaintiff; that after deducting this total sum of $280.36 from monies claimed by plaintiff, there is due plaintiff from defendant the sum of $1,518.22, payment of which was tendered plaintiff prior to the commencement of this action and defendant now makes said tender good by paying to the Clerk of the above entitled Court this said sum of $1,518.22 for the use and benefit of plaintiff."

The parties submitted the cause to the trial court upon an agreed statement of facts, stipulating the question for the court's decision as follows:

"The only question before the Court is whether the defendant is entitled to an additional bonus of $272.23 for that period of time commencing January 1st, 1945, and ending May 31st, 1945, together with $8.13 on a balance adjustment."

Following this and made a part of the agreement are sixteen documents, each having either a direct or an incidental bearing on the question.

During the trial, the plaintiff conceded that the defendant was entitled to the $8.13 credit above mentioned. The trial court held that the defendant was entitled to an additional bonus credit amounting to $241.67, and entered judgment for the plaintiff in the sum of $30.56, and for $23.10 costs. The appellant attacks the bonus allowance only.

The respondent acted as a distributor of the appellant's line of automobile tires, tubes, and so forth, since 1936. Exhibits A and J are copies of the distributor's sales agreement entered into on December 28, 1939. It was a three-year con-

tract. Subsequently, by a rider executed by both parties as of May 29, 1942, and attached to the contract, it was stipulated:

"For and in consideration of the desire of both parties to extend the Distributor Sales agreement beyond its present termination date, and for the mutual benefits arising therefrom, it is hereby mutually agreed that said Distributor Sales Agreement is hereby extended for a period of three (3) years from date of the execution of this Rider, or the date of expiration of said Agreement, *whichever may be sooner*, subject to all of the terms and conditions of the original." (Italics ours.)

Under this stipulation, the distributor's sales agreement expired on May 29, 1945, and it was not renewed.

For some time, at least as early as 1936, the appellant had voluntarily offered a bonus plan to dealers with whom it had distributor's sales agreements. A number of these so-called bonus plans are exhibits attached to the agreed statement of facts. Among these are one designated, "effective November 2, 1936," another, "effective November 1, 1938," another, "effective April 15, 1940," another, "effective January 1, 1941," and still another, "effective January 1, 1945." As the last mentioned was effective during the period for which the additional bonus was claimed, we quote the major portion of it. This instrument, as were all the other so-called bonus plans, was entirely in print, and was not executed by the parties as a contract. The respondent accepted by performance. It reads, in part, as follows:

"The Kelly-Springfield Tire Company
"Kelly-Springfield Confidential Distributor Bonus Plan
"Effective January 1, 1945

"For the purpose of encouraging Kelly distributors to extra selling and advertising effort on all classes of sales; to encourage purchases in larger quantities; for the maintenance of adequate personnel for solicitation and service to its associate dealers and commercial and consumer accounts; for the conducting of a place of business adequately housed, equipped and operated and with appropriate and ample signs and other advertising mediums to identify the place of business as a point of distribution of Kelly-Springfield merchandise; as a reward for such sales and service effort,

*Company voluntarily offers the following bonus plan, eligible only to confidential distributors holding a Kelly-Springfield Distributor Sales Agreement.* [Italics ours.]

"PRODUCTS ON WHICH BONUS WILL APPLY:

"Automobile Casings and Tubes

"Truck and Bus Casings and Tubes

"Industrial Solid Tires

"COMPUTATION OF BONUS:

"ANNUAL BONUS

"A bonus for volume will be allowed on net purchases as follows:

"$ 5,000—$ 7,499—2½%
  7,500—  9,999—3½%
10,000— 14,999—4½%
15,000— 19,999—5  %
20,000— 24,999—5½%
25,000 and over—6  %

"DEFINITION OF NET PURCHASES:

"Net purchases mean total billing of products on which Distributor Bonus will apply, less 'Add-on' and Federal Excise Tax, less charges for advertising and sales promotional material, less rebates, less allowances, less returned goods, and all other credits, except credits for transportation, cash discount, previous year's earned bonus. *Payment of bonus will be made by merchandise credit, as soon as possible after December 31, 1945.* [Italics ours.]

"[At this point, we omit certain provisions relating to discounts with which we are not here concerned.]

*"The Company reserves the right to modify or withdraw the above bonus plan at any time without previous notice to the Distributor, but will make equitable adjustment with Distributors who have fully complied with the conditions hereunder for any transactions up to the date of such modification or withdrawal,* and the above plan shall not be subject to any verbal statements or agreements, *or trade customs of any kind or nature,* nor by written communication, except when signed by an Executive Officer of The Kelly-Springfield Tire Company, and shall terminate not later than December 31, 1945. [Italics ours.]

"January 1, 1945.   THE KELLY-SPRINGFIELD TIRE COMPANY"

We quote a portion of the respondent's claim, which is in the record as exhibit H:

"Our claim is based on the assumption that bonus credits issued to us for the first five months of 1945 should be figured

at the annual *rate* at which we purchased during that period. Kelly has allowed such a basis of credit allowance in the past. By concluding a relationship in the middle of a calendar year and not basing the bonus percentage on an annual rate of business, Kelly in effect raised the price to us.

"Annual Bonus

"$9029.05 (net purchases five mo.) ÷ 5 = $1805.81 Average purchases per month.

"$1805.81 × 12 = $21,669.72 Annual rate of purchases. This in 5½% bracket.

"$9029.05 × .055 = $496.60 Credit which should be allowed.

$316.02 Bonus allowed (3½% on $9029.05)
—————
$180.58 Additional annual bonus due."

(This is followed by an additional claim on the same theory for truck bonus. There is, however, no dispute as to amounts. It is the theory upon which the computations should be made, that is in issue, and the foregoing is sufficient for our present inquiry.)

Referring back to the bonus plan hereinbefore quoted, it will be seen that, for net purchases of from $7,500 to $9,999, inclusive, the bonus scale is 3½%, and from $20,000 to $24,999, inclusive, is 5½%. The exact question presented is: Which rate is applicable to the $9,029.05 net purchases made from January 1, 1945, to May 29, 1945, inclusive? The trial court held that the 5½% rate was applicable. We quote the determinative findings of fact:

"(3) The court finds from said Exhibits that plaintiff's Confidential Distributor Bonus Plan was changed from time to time commencing in 1936. That different rates of bonus *was* paid from time to time; that in 1940 plaintiff changed the date of its Distributor Bonus Plan and voluntarily paid to defendant the sum of two and one-half per cent for the sales in November and December in said year, which said 2½% was based on the ratio of a total year's sales in the 2½% bracket and not for the bracket going to a sixty-day period. The Distributor Contract from plaintiff to defendant expired May 29th, 1945. Plaintiff's Exhibit 'C' provides for an equitable adjustment with distributors who have fully complied, etc.

"(4) That defendant fully complied with all of the terms of its contract with plaintiff; that plaintiff established a custom by voluntarily making a settlement for a period of

less than one year as established by defendant's Exhibits 'L' and 'M'; that defendants are entitled to recover as a bonus on sales made both for passenger car tires and casings as well as truck tires and casings for that period of time commencing January 1st, 1945, and ending May 29th, 1945, at the same rate of bonus and in the same brackets that said sales would have placed defendants had they proceeded throughout the twelve-month period of 1945."

The above findings were made upon the same written evidence that we have before us, but we do not reach the same conclusion the trial court arrived at, for the following reasons:

■ We are of the opinion that the respondent cannot rely upon that portion of the bonus plan which speaks of "equitable adjustment." We requote it, attaching numbers to the significant portions thereof for the sake of convenient reference:

"[1] The Company reserves the right *to modify or withdraw the above bonus plan at any time without previous notice to the Distributor, but will make equitable adjustment with Distributors who have fully complied with the conditions hereunder for any transactions up to the date of such modification or withdrawal,* [2] and the above plan shall not be subject to any verbal statements or agreements, or trade customs of any kind or nature, nor by written communication, except when signed by an Executive Officer of The Kelley-Springfield Tire Company, and shall terminate not later than December 31, 1945." (Italics ours.)

It seems clear to us that the equitable adjustment provision provided in [1] of the above paragraph relates only to situations where the bonus plan is modified or withdrawn during the actual performance of a distributor's continuing sales agreement. At all events, in the instant case, the bonus plan was neither modified nor withdrawn. The contract to which it was a sort of an appendage, expired according to its terms, and the bonus plan necessarily died a natural death.

■ We are further of the opinion that the respondent is not entitled to prevail on the theory of custom, as indicated in the findings of the trial court. We are of that opinion, for

several reasons: (1) It would seem that custom is excluded by that portion of the preceding quotation following [2]; (2) A single instance is not sufficient to establish a custom; (3) The act done by appellant in 1940, and relied upon as establishing a custom, is a very different thing than that which the respondent contends the appellant must now do.

As has hitherto been shown, the distributor sales agreement was entered into in December, 1939, and extended by rider until May 29, 1945. It was, therefore, in effect during the entire calendar year of 1940. The bonus plan then in force became ineffective by its terms the last of October, 1940, and the subsequent bonus plan did not go into effect until January 1, 1941. Nevertheless, in paying the bonus for 1940 after December 31st, the appellant applied the percentage rate on the total amount of purchases made during the entire year 1940, including those made in November and December. This was a reasonable and just thing to do. At that time, its contract with respondent had still two years to run. It had renewed the bonus plan on January 1st, and it had profited from the sales the respondent had made in November and December, in the same way it had from the sales made during the first ten months of the year. But, in the instant case, the distributor's sales contract with respondent expired on May 29, 1945. No purchases whatever were made by respondent during the ensuing seven months. The appellant got no profits from any sales made by respondent during that period. The relation between the parties had entirely ceased. The situation is utterly different from that presented in 1940.

We are of the opinion, and so hold, that the trial court erred in awarding respondent an additional bonus of $241.67 as an offset to appellant's claim.

The cause will be remanded to the trial court for modification of the judgment appealed from as above indicated.

MALLERY, C. J., MILLARD, JEFFERS, and SCHWELLENBACH, JJ., concur.